

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-1995

# Columbia Gas v Tarbuck

Precedential or Non-Precedential:

Docket 94-3643

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Columbia Gas v Tarbuck" (1995). *1995 Decisions.* Paper 213.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/213

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 94-3643

----------

COLUMBIA GAS TRANSMISSION
CORPORATION

v.

MICHAEL D. TARBUCK,

Appellant

----------

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 93-cv-02112)

----------

Argued Wednesday, June 28, 1995

BEFORE:   HUTCHINSON, ROTH and GARTH, Circuit Judges

----------

(Opinion filed  August 9, l995)

----------

Sanford S. Finder   (Argued)
Finder, Allison & Graham
66 West Wheeling Street
Washington, Pennsylvania   15301
Attorney for Appellant

Harry C. Bruner Jr.              Kevin C. Abbott
Columbia Gas Transmission        Deborah P. Powell   (Argued)
Corp.                            Carolyn Holtschlag Allen
P.O. Box 1273                    Thorp, Reed & Armstrong
Charleston, WV 25325             One Riverfront Center
                                 Pittsburgh, Pennsylvania   15222

1

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:


Michael Tarbuck appeals the district court's order of October 14, 1994, which permanently enjoined Tarbuck from encroaching on rights of way owned by Columbia Gas Transmission Corporation. Tarbuck argues that the amount in controversy between Columbia and himself does not exceed $50,000 as required by 28 U.S.C. § 1332.

The district court found that Columbia owned two fifty foot rights of way over Tarbuck's property and that it would cost Tarbuck $4,000 to remove the overburden which had been placed by Tarbuck on the rights of way. Tarbuck argues that $4,000 is the amount in controversy. The Supreme Court's decision in Glenwood Light Co. v. Mutual Light Co., 239 U.S. 121 (1915), however, settled that in diversity suits for injunctions the cost of compliance is not the definitive measure of the amount in controversy. Rather, we measure the amount in controversy by the value of the rights which the plaintiff seeks to protect.

Because the value to Columbia of protecting the rights of way by this action is alleged to be in excess of the jurisdictional minimum and the actual value to Columbia is not legally certain to be less than the jurisdictional threshold, we conclude that federal jurisdiction exists. Accordingly, we will affirm the district court's judgment in favor of Columbia. In

3

doing so, we hold that the district court had jurisdiction under 28 U.S.C. § 1332 and that Columbia's rights of way are indeed fifty feet wide.

## I.

Michael Tarbuck owns two parcels of land adjacent to Route 19 in Southwestern Pennsylvania. Pursuant to two separate deeds, Columbia owns rights of way across the parcels to operate a twenty inch natural gas pipeline. In December 1993, Columbia sought a preliminary and a permanent injunction, requiring Tarbuck to remove the overburden on the rights of way (i.e. the three to six feet of excess topsoil which Tarbuck placed on Columbia's rights of way). Columbia also sought an order preventing Tarbuck from placing any further topsoil on the easements.

In his answer, Tarbuck denied any encroachment, denied that Columbia's right of way was fifty feet in width, and claimed that the district court lacked jurisdiction because the amount in controversy did not exceed $50,000.

To sustain its claim to diversity jurisdiction,[1] Columbia introduced the following evidence which the district court accepted. Columbia engineers testified that the overburden placed additional pressure on the pipe which could result in a possible rupture. Further, the engineers testified

---

[1] For purposes of diversity, Columbia is a citizen of Delaware and West Virginia. Tarbuck is a citizen of Pennsylvania.

4

that the overburden interfered with instruments used in periodic federally mandated inspections of the protective coating of the pipeline. The district court recognized that if the pipeline were to leak, the escaping gas could migrate to a nearby building or a nearby road and explode, causing significant personal and property damage. The district court also concluded that Columbia was presently violating the applicable federal regulations and thus could not continue to operate the pipeline under these conditions indefinitely.

The district court also determined the following. It would cost approximately $4,000 for Tarbuck to remove the excess cover. Alternatively, it would cost Columbia $100,000 to raise the pipe to the appropriate level within the existing right of way or $1,000,000 to relocate the pipeline to different property. Neither party presented any evidence as to the value of the rights of way nor the value of Tarbuck's land whether or not burdened by the rights of way.

Based on these facts, the district court concluded that the amount in controversy exceeded $50,000. It further concluded that Tarbuck had encroached on the rights of way by placing additional topsoil over the pipeline and entered a permanent injunction requiring the removal of the overburden.

Turning to the width of the rights of way, the district court found that Columbia's predecessor in interest obtained the easements in the 1940s by two deeds. While one deed expressly provided for a fifty foot right of way, the other deed stated no width.

5

Columbia introduced evidence that it had regularly mowed twenty five feet to either side of its pipeline.  Further, it used the whole fifty feet in 1981 to replace part of the pipe.  Finally, Columbia's engineers testified that Columbia needed fifty feet to maintain or repair the line because occupational safety regulations required that Columbia slope the excavation and place equipment safely around the stretch of pipe being repaired.

Tarbuck was on notice of Columbia's claim to fifty feet before he acquired the property.  Three months before purchasing the property in April 1991, Tarbuck tacitly acknowledged the existence of a fifty foot right of way when he sought information on the building restrictions imposed by the rights of way.  Representatives of Columbia marked the location of the pipeline with flags for Tarbuck and completed the Location of Gas Lines form which he signed.  The Columbia form Tarbuck signed explicitly stated that the rights of way were fifty feet in width.

Based on this evidence, the district court concluded that each of the rights of way was fifty feet in width.


II.

The principal issue on appeal is whether the amount in controversy exceeds $50,000.  28 U.S.C. § 1332 provides that:

> The district courts shall have original
> jurisdiction of all civil actions where the
> matter in controversy exceeds the sum or

6

> value of $50,000, exclusive of interest and
> costs, and is between . . . citizens of
> different States . . . .

Tarbuck argues that we must measure the amount in controversy by reference to the cost ($4,000) of removing the overburden. Columbia principally contends that the appropriate measure of the jurisdictional amount is either the cost of the injuries which could result if the pipeline leaked or the cost of possible federal fines that could be imposed. At oral argument, Columbia, citing Glenwood Light Co. v. Mutual Light Co., 239 U.S. 121 (1915), additionally claimed that the value of maintaining its rights of way without interference from Tarbuck must be considered in determining the jurisdictional amount in controversy.

The amount in controversy is measured by reference to the value of the rights which Columbia possesses by virtue of the rights of way. We hold that because it is not legally certain that the value of these rights is less than $50,000, section 1332 was satisfied, thereby meeting federal jurisdictional requirements.

A party who invokes the jurisdiction of the federal courts has the burden of demonstrating the court's jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). In diversity cases, we generally accept a party's good faith allegation of the amount in controversy, but where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the

assistance of the federal courts must produce sufficient evidence to justify its claims. Burns v. Massachusetts Mutual Life Insurance Co., 820 F.2d 246, 248 (8th Cir. 1987).

The test for determining the amount in controversy in diversity cases was established by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab. Co., 303 U.S. 283 (1938).

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

Id. at 288-89 (emphasis added and footnotes omitted). Red Cab gave rise to two jurisdictional principles. First, dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met; the reasonable probability that the amount exceeds $50,000 suffices to vest the court with jurisdiction. Second, the ultimate failure to prove damages over $50,000 does not belatedly divest the federal court of jurisdiction unless the proofs at trial demonstrate that the

8

plaintiff never had a colorable claim that exceeded $50,000. In that latter circumstance, the case will be dismissed. Jones v. Knox Exploration Corp., 2 F.3d 181 (6th Cir. 1993); Ehrenfeld v. Webber, 499 F. Supp. 1283, 1294 (D. Me. 1980).[2]

Where the plaintiff in a diversity action seeks injunctive or declaratory relief, the amount in controversy is often not readily determinable. Under those circumstances, the amount in controversy is determined by "the value of the object of the litigation." Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 347 (1977); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 191 (1936). Unfortunately, this phrase has proven less than clear in its application to the many different claims for equitable relief that have arisen out of our diversity jurisdiction. 1 James Wm. Moore, Moore's Federal Practice § 0.95 (2d ed. 1995).

The case which most closely approximates the current case is Glenwood Light Co. v. Mutual Light Co., 239 U.S. 121 (1915). Glenwood Light sought the removal of Mutual Light's poles and wires, which had been constructed adjacent to Glenwood's poles and wires in a manner which endangered the operation and maintenance of Glenwood's facilities. The district court found that the removal of the encroaching wires would cost $500, well below the then $3,000 jurisdictional minimum, and

---

[2]In a substantially different context, we recently held that a contract which limits liability to $50,000 did not satisfy the amount in controversy. Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 209 (3d Cir. 1995). But see Valhal Corp. v. Sullivan Associates, Inc., 48 F.3d 760 (3d Cir. 1995) (statement sur denial of petition for rehearing).

9

dismissed the case for lack of jurisdiction.  The Supreme Court

disagreed.

> We are unable to discern any sufficient ground for taking this case out of the rule applicable generally to suits for injunction to restrain a nuisance, a continuing trespass, or the like, viz., that the jurisdictional amount is to be tested by the value of the object to be gained by complainant.  The object of the present suit is not only the abatement of the nuisance, but (under the prayer for general relief) the prevention of any recurrence of the like nuisance in the future. . . .
>
> The District court erred in testing the jurisdiction by the amount that it would cost defendant to remove its poles and wires where they conflict or interfere with those of complainant, and replacing them in such a position as to avoid the interference. Complainant sets up a right to maintain and operate its plant and conduct its business free from wrongful interference by defendant. . . . The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of jurisdiction.

Id. at 125–26.[3]

Glenwood Light disposes of Tarbuck's argument that the

cost of removing the overburden is the appropriate measure of the

---

[3]  We have previously applied Glenwood Light and found jurisdiction where discharge from an upstream coal plant created a nuisance and continuing trespass to downstream property even though the riparian owner had not yet been injured in excess of the jurisdictional minimum and the cost of abatement had not been settled. Kelly v. Leigh Nav. Coal Co., 151 F.2d 743, 745 (3d Cir. 1945), cert. denied, 327 U.S. 779 (1946).  "It is well settled that in an action of this nature, the jurisdictional amount is to be calculated on the basis of the property right which is being injured.  If that property right has a value in excess of $3,000 [the previous jurisdictional threshold] the Federal Court has jurisdiction of such a diversity suit even though the plaintiff had not suffered $3,000 damage at the time suit was instituted."  Id. at 746.

amount in controversy.  In Glenwood Light, the Court rejected
Mutual Light's claims that the $500 cost of removing its
encroaching poles and wires was the amount in controversy.  We
similarly reject the argument advanced here by Tarbuck that the
$4,000 cost of removing the overburden is the amount in
controversy in this case.

In Glenwood Light, the defendant had not questioned
that the value of the right identified by the Court -- "a right
to maintain and operate its plant and conduct its business free
from wrongful interference by the defendant" -- exceeded the
jurisdictional minimum.  Consequently, the Court concluded that
federal jurisdiction existed without determining the value of
Glenwood Light's rights.  Here, however, Tarbuck has argued that,
even if the measure is not his cost of compliance, the value of
the rights of way or the value of obtaining the injunction is
less than $50,000.

III.

The record here discloses the cost of two alternatives
which Columbia might pursue to operate its pipeline without the
removal of the overburden or without a fifty foot wide right of
way.  Because Tarbuck had deposited additional soil on the rights
of way, Columbia's pipeline, which should have been approximately
three feet from the surface is now located seven feet beneath the
surface.  Thus, as one alternative, Columbia could raise the pipe
to the proper depth within the existing rights of way at a cost
which the district court found to be $100,000.  As a second

11

alternative, Columbia could reroute the pipe on different property at a cost which the district court found to be $1,000,000.

The cost of either alternative clearly exceeds the jurisdictional minimum. No feasible lower cost alternative to obtaining the injunction is presented on this record. Thus, jurisdiction exists under 28 U.S.C. § 1332.

At oral argument, Tarbuck argued that Columbia could have entered the right of way and removed the overburden itself. Because Columbia, in doing so, would have had to remain within the rights of way (the width of one of which had yet to be judicially determined when this action commenced) and would have had to dispose of the topsoil it removed, such an action would almost certainly cost more than $4,000. However, we cannot say that Tarbuck was unreasonable in suggesting that the overburden removal by Columbia might still cost less than $50,000.

Tarbuck's calculations however ignore the full measure of relief which Columbia seeks. Columbia seeks not only the removal of the excess topsoil but it also seeks an order preventing any future encroachment. To paraphrase Glenwood Light, "The object of the present suit is not only the [removal of the overburden], but . . . the prevention of any recurrence of the like [encroachment] in the future. . . . The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of jurisdiction." 239 U.S. at 125-26.

12

Given Tarbuck's vigorous defense of this suit and his repeated failures to comply with Columbia's requests that he cease interfering with the rights of way before the suit began, we do not doubt that the injunction sought by Columbia is an integral part of the controversy in this case.[4]

We further note that once Tarbuck denied that Columbia's rights of way were fifty feet wide, the width of the rights of way became an essential part of the controversy. Columbia contends that it cannot properly maintain its lines without fifty feet in which to make repairs. Any lesser amount would cause Columbia to be out of compliance with state and federal occupational safety regulations. Columbia substantiates its claim by the unchallenged testimony that it used the whole fifty feet to repair the pipeline in 1981. If the district court were to have determined that Columbia owned less than fifty feet, Columbia would apparently have been forced to obtain the additional footage or reroute its pipeline.

Tarbuck claimed at oral argument that Columbia could have obtained the necessary additional width by eminent domain for less than $50,000, but there is no evidence in the record to substantiate his claim. Nor is there any evidence from which we could conclude that eminent domain proceedings presented a timely alternative to Columbia's suit.

---

[4] This does not suggest that a litigant may always meet the amount in controversy simply by requesting an injunction which prevents the recurrence of an allegedly impermissible trespass or nuisance. Such recurrence must not be speculative and the alternatives to the injunction must still exceed $50,000.

13

Our examination of the record does not disclose any additional means by which Columbia could operate its lines within the parameters of the applicable federal regulations. Consequently, we cannot say to a legal certainty that the cost of any alternatives available to Columbia is less than $50,000. Hence, we have federal jurisdiction over Columbia's claims under 28 U.S.C. § 1332.[5]

We need not reach Columbia's speculative claims that the damage that might result from a leak or that the fines it might have to pay in administrative proceedings would exceed $50,000. These claims present Columbia's conjecture, and we will not ordinarily consider such speculative arguments in determining the amount in controversy. See Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir.) ("[T]he jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources."), cert. denied, 409 U.S. 983 (1972); see also Healy v. Ratta, 292 U.S. 263, 267 (1934) (refusing to consider the collateral effects of the judgment on other claims or other plaintiffs in determining the jurisdictional amount).

IV.

Having determined that we have jurisdiction, we turn to Tarbuck's claim on the merits that the right of way over one of his parcels was less than fifty feet in width. Under

---

[5] Because we conclude that we have jurisdiction under § 1332, we need not consider Columbia's claims that we have jurisdiction under 28 U.S.C. § 1331 by virtue of the controversy's relationship to the National Gas Act, 15 U.S.C. § 717-717z.

14

Pennsylvania law, ambiguous easements are construed to provide the grantee the "`reasonable and necessary' use of the right of way within the purpose of the easement and the intentions of the original parties to the grant."  Zettlemoyer v. Transcontinental Gas Pipeline Corp., 657 A.2d 920, 926 (Pa. 1995) (internal citations omitted).  Under this standard, we have little difficulty affirming the district court's determination that the deed, which did not expressly state a width, nonetheless granted Columbia fifty feet.

The original deed expressly stated the purpose of the grant -- the operation of a pipeline.  Columbia introduced testimony that it could not properly maintain or repair the pipeline without twenty five feet of work space to either side of the pipeline.  Consistent with this assertion, Columbia has periodically mowed the full width of fifty feet and used the full fifty feet, when it was obliged to replace part of the pipe in 1981.  Moreover, Tarbuck acknowledged the existence of a fifty foot right of way in February 1991 when he signed a Columbia form which listed the restrictions imposed on the use of the property as a result of the right of way.

This evidence confirms that fifty feet is the reasonable and necessary width needed to operate a twenty inch gas pipeline.  See Columbia Gas Transmission Corp. v. Large, 619 N.E.2d 1215 (Ohio Misc. 1992) (finding fifty feet to be the appropriate width); Roebuck v. Columbia Gas Transmission Corp., 386 N.E.2d 1363 (Ohio. App. 1977) (same).  The record fully supports the district court's conclusion "that the entire right-

15

of-way granted to Columbia is 50 feet wide," App. at 314, whether considered as a finding of fact, to which we would defer, or as a mixed question of law or fact, over which we have plenary review. Zettlemoyer, 657 A.2d at 926.  We are satisfied the district court did not err; hence, we affirm.

## V.

Because the cost of the alternatives which would permit Columbia to continue to operate its business without interference and without obtaining a permanent injunction exceed $50,000, we conclude that the amount in controversy satisfies our jurisdictional requirement.  On the merits, we will affirm the district court's judgment that Columbia's rights of way are both fifty feet wide.