

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-2003

# Texas Eastern Transm v. Bowers

Precedential or Non-Precedential: Non-Precedential

Docket 02-1857

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Texas Eastern Transm v. Bowers" (2003). *2003 Decisions.* Paper 640.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/640

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1857

TEXAS EASTERN TRANSMISSION LP
Appellant

v.

WILLIAM BOWERS III and CAROL S. BOWERS

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 01-4488)
District Judge: Honorable John R. Padova

Argued February 25, 2003

Before: BECKER, Chief Circuit Judge and SCIRICA, Circuit Judge
SHADUR[*], District Judge

(Filed April 18, 2003)

[*]Honorable Milton I. Shadur, United States District Court Judge for the Northern
District of Illinois, sitting by designation.

Charles W. Rubendall II (Argued)
Donald M. Lewis III
Keefer Wood Allen & Rahal, LLP
210 Walnut Street
P.O. Box 11963
Harrisburg, PA 17108-1963

  Attorneys for Appellant

Andrew J. Bellwoar (Argued)
Alexander J. Chotkowski
Siana, Bellwoar & McAndrews
941 Pottstown Pike
P.O. Box 630
Exton, PA 19341

  Attorneys for Appellees

————————

OPINION OF THE COURT

————————

SHADUR, District Judge.

Texas Eastern Transmission, L.P. ("Texas Eastern") appeals from an opinion and order of the United States District Court for the Eastern District of Pennsylvania that granted a permanent injunction concerning an easement for two pipelines over property located at 2066 Dutton Mill Road, Newton Square, Chester County, Pennsylvania (the "Property"), which contains the residence and surrounding area owned by appellees William Bowers III ("Bowers') and Carol S. Bowers (collectively "the Bowers"). Texas Eastern challenges the district court's determination that the easement, although it also extended to a strip 25 feet in width outside of each pipeline, did not require the removal of

a mature oak tree (the "Tree") located within one of those strips.  Because we uphold the district court's decision that the Tree did not unreasonably interfere with Texas Eastern's ability to repair and inspect the pipelines, we affirm the district court's decision.

## Scope of Review

We review the terms of an injunction for an abuse of discretion, while underlying questions of law receive de novo review and factual determinations are reviewed for clear error (Acierno v. New Castle County, 40 F.3d 645, 652 (3d Cir. 1994)).  "When there are two permissible views of the evidence, the district court's choice between them cannot be clearly erroneous" (Durham Life Ins. Co. v. Evans, 166 F.3d 139, 147 (3d Cir.1999)).

## Background[1]

Texas Eastern is a Delaware limited partnership that operates interstate natural gas pipelines pursuant to certificates of public convenience and necessity issued by the Federal Energy Regulatory Commission (or its predecessor, the Federal Power Commission).  Texas Eastern is the successor to the original grantee, under deed dated February 19, 1943, of a right of way and easement "to lay, operate, renew, alter, inspect, and maintain" one or more pipelines across the Property for the transportation of natural gas.  But the terms of the easement fail to define a specific width or to identify any exceptions or potential exceptions to flesh out that general language.  In any event, before the Bowers purchased the Property the easement was implemented by the construction of two parallel 20-inch

---

[1]This background recital is drawn in large part from the district court's clear recitation of the relevant facts.

high-pressure natural gas pipelines (Lines 1A and 1H) across the Property, separated by a distance of 38.5 feet. In addition, an ExxonMobil pipeline is located within the easement and between the two Texas Eastern Pipelines.

In 1963 the Bowers purchased the Property subject to the terms of the easement, so that both parties are bound by its terms. Both a house and a swimming pool have been built on the Property, approximately 23 feet and 19 feet respectively from Line 1H, (T. Add. Ex. at 3) but Texas Eastern does not seek to interfere with those improvements. Its only target is the Tree, which is located about 14 feet from Line 1H.

According to the district court's findings, Texas Eastern must be able to (1) locate and gain access to the pipelines readily, (2) to inspect the lines and (3) to take all steps necessary to permit the early detection of leaks, all of which in turn facilitate the rapid taking of corrective actions. Routine inspections of the pipeline must be performed by Texas Eastern personnel to ensure proper safety and maintenance of the pipelines. Consequently the district court found that access to the easement must not be unreasonably restricted or obstructed by the Bowers.

Although Texas Eastern performs a variety of tests to detect leaks, it relies primarily on aerial surveys, conducted two or three times per week, to facilitate early detection and to identify any physical changes to the Property that have the potential to affect the pipelines adversely. During those surveys Texas Eastern's pilot Steven Warner ("Warner") flies at an altitude of 700 to 800 feet above the pipeline and looks out of his pilot-side window at the ground above the pipelines. Warner testified that he must have a clear view

4

of the entire width of a  right of way during an overflight, but that the Tree in full foliage can block the view for a distance of about 100 to 150 feet.  For his part, Bowers testified that when standing directly underneath the Tree he was able to see the pilot-side window of the plane engaged in the aerial survey.

Texas Eastern filed suit after it had informed the Bowers of its intention to clear the easement of trees, shrubs, limbs and any other possible obstructions, and after the Bowers had stated objections to that plan.   In its January 17, 2002 opinion and order, the district court found that a 25 foot strip to the outside of each pipeline is necessary for the reasonable and proper enjoyment of the easement.  But the court also found that the removal of the Tree, which is located within that aggregate 88.5-foot-wide strip,[2] is not necessary either for the repair of a damaged pipeline or for inspection purposes.

Rights of an Easement Grantee

Zettlemoyer v. Transcontinental Gas Pipeline Corp., 657 A.2d 920, 924 (Pa. 1995) teaches that under Pennsylvania law the holder of a geographically undefined easement, such as that in issue here, "is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted."  Application of that concept of reasonableness to the physical scope of the easement requires not only analysis of the original purpose of the grant but also consideration of  "[t]he use, the available technology, the lay of the land, and many other factors [that] make a blanket rule of the width of an undefined easement

---

[2]That figure comes from adding 25 feet outward from each pipeline to the 38.5 feet between Line 1A and Line 1H.

untenable" (<u>Texas Eastern Transmission Corp. v. Grassi</u>, Nos. 89-4617, 89-5515, 1992 WL 172594, at *6 (E.D. Pa. July 12, 1992)).

Here the self-defining purpose of the easement was the already-quoted need "to lay, operate, renew, alter, inspect and maintain" the pipelines. (App. 31)  As for what is "necessary for the reasonable and proper enjoyment" of those activities, numerous courts (including this one) have found that 25 feet to each side of the pipeline is required for a 20-inch pipeline (see, e.g., <u>Columbia Gas Transmission Corp. v. Tarbuck</u>, 62 F.3d 538, 544 (3d Cir. 1995), affirming such a determination by the same able district judge who reached the decision here; <u>Roebuck v. Columbia Gas Transmission Corp.</u>, 386 N.E.2d 1363,  1368 (Ohio App. 1977), followed in  <u>Columbia Gas Transmission Corp. v. Large</u>, 619 N.E. 2d 1215, 1216 (Ohio Com. Pl. 1992); cf. <u>Columbia Gas Transmission Corp v. Savage</u>, 863 F. Supp. 198, 201-02 (M.D. Pa. 1994), applying Pennsylvania law.   That line of decisions informed the identical finding by the district  court here, and the Bowers do not quarrel with that determination in general terms.

But Texas Eastern seeks to go beyond that judge-made standard to urge that all encroachments within that space must be removed because they interfere with the rights of the easement holder, pointing to such cases as <u>Tarbuck</u>, 62 F.3d at 544 and <u>Large</u>, 619 N.E. 2d at 1216.  In its view it is entirely a matter of grace that would allow the Bowers to maintain even the portions of the swimming pool and the house that are within the 25-foot zone.  But if Texas Eastern had wanted such a bright-line rule that permitted of no exceptions (except perhaps those that it might waive in its sole discretion), it should have

6

drafted the easement to say so. It did not. Hence the same principle that allows for a judicial determination of reasonableness leaves it to the courts to determine what is "necessary for the reasonable and proper enjoyment" to effectuate the purpose of the easement.

That is precisely what the district court did in this case. Instead of Texas Eastern's characterization of that court's creating an "exception" for the Tree located within 25 feet of the pipeline, (Blue 13) the district court simply defined the previously undefined scope of the easement with a full awareness of all existing encroachments. Hence the district court allowed retention of the Tree (just as the swimming pool and house were left undisturbed) because it found that the Tree did not interfere with Texas Eastern's use and enjoyment of the easement. By questioning the reach of the injunction in excluding the Tree from the scope of the easement, Texas Eastern is essentially challenging the district court's factual finding that the Tree would not interfere with two actions necessary for the enjoyment of the easement: emergency repair work and inspections for leaks and obstructions.

Emergency Repair Work

As to the issue of any emergency repair work that might become necessary, the district court actually relied on the testimony of Texas Eastern's expert witness in pipeline construction and safety Edward J. Murphy ("Murphy") to find that the current removal of the Tree is not needed for such work. It cited Murphy's testimony that in the event of a leak emergency repair work could still be performed with the Tree present -- and if it turned out

that the circumstances of a particular emergency posed problems because of the Tree's presence, the work could still be done with the expenditure of only "five additional personnel and ten additional hours." Moreover, the district court pointed to Murphy's testimony that trees similar to the Tree could be felled in an hour if an emergency leak really required it.

Texas Eastern contends that the district court "erred in characterizing the effort required to remove the Tree as a 'minimal extra burden,' and further erred in weighing the undisputed risk to public safety...against the 'privacy, shade and aesthetic appeal and value' of the tree.". But to repeat the teaching of Durham Life, 166 F.3d at 147, "[w]hen there are two permissible views of the evidence, the district court's choice between them cannot be clearly erroneous." We therefore uphold the district court's determination that the additional ten hours (at the outside) to repair the pipeline is only a "minimal burden" and that the continued presence of the Tree will not significantly interfere with emergency repair of the pipeline.

Texas Eastern further challenges the district court's reliance on Murphy's testimony about the ability to fell such a tree in an hour (though Texas Eastern did not object to that testimony when it was given). But in any events such testimony is admissible and could properly be credited by the district court. Murphy was testifying about events that he had witnessed personally. It does not matter that some other finder of fact might perhaps have reached a different conclusion. Under the standard by which we review factually-based determinations by a district court, we will not disturb the decision that a delay of one hour

8

(plus the assumed amount of time for the tree cutter to come to the Property) was not an unreasonable burden on Texas Eastern's enjoyment of the easement.

In sum, the district court relied permissibly on evidence that showed that emergency repair work could be completed in a relatively short additional time, with a minimal burden of a few extra workers. We surely cannot say that it was clear error to define the easement in such a way that the Tree was excluded from the easement after taking account of emergency repair considerations.

<u>Detection of Leaks and Obstructions</u>

Next Texas Eastern contends that the Tree interferes unreasonably with the detection of pipeline leaks and obstructions on the easement. On that score the district court found the evidence insufficient to call for removal of the Tree as being necessary to allow such detection by aerial inspection.

In that respect we do not share the district court's treatment of Bowers' testimony that he could see the pilot's window when standing underneath the Tree as an effective counter to the pilot's testimony as to what he could not see fully from the air -- although those sight lines are of course reciprocals of each other, the groundling's ability to see the plane's window does not of itself equate to an effective air-to-ground viewing of the ground beneath the Tree. But the district court also properly cited the numerous alternate methods of testing that Texas Eastern employs, as well as the many years during which Texas Eastern has been able to inspect the pipeline effectively with the Tree on the Property. And there is no indication that the aerial view cannot also be accomplished more effectively in a

9

number of ways -- by changing the angle of approach in that phase of the flyby or otherwise. Because there is more than ample credible evidence to support the district court's findings even without reference to the Bowers testimony, we cannot find it was clearly erroneous for it to hold that the Tree did not need to be removed for the detection of leaks or obstructions.

*     *     *

To sum up, Texas Eastern has not shown that the district court's resolution was clearly erroneous as to the absence of any need to remove the Tree either for repair work or for the effective detection of leaks and obstructions. We uphold the district court's determination that the removal of the Tree is unnecessary for the necessary and proper enjoyment of the easement.[3]

## Conclusion

It follows then that we uphold the scope of the District Court's permanent injunction -- one that provides for an easement spanning the distance between the pipelines plus

---

[3] In a sense Texas Eastern reveals its real motivations by urging that "there is an additional independent and sufficient reason" to overturn the definition of the easement because it "establishes a precedent that is likely to lead to future disputes between the parties, as well as a grave risk of multiple litigation prompted by property owners who wish to carve out exceptions to pipeline easement boundaries for the purpose of preserving individual Trees and other specific encroachments." But all litigants must recognize that this Court's role is to decide only the case at hand, not to provide favorable "precedent" that might serve as a basis for arguing future cases that may call for different handling because of materially different facts. Once again, if Texas Eastern had wished to impose a bright-line 25-foot standard without exceptions it should have drafted its easements differently.

10

another 25 feet to the outside of each pipeline, subject to the existing encroachments of the Tree, part of the Bowers' house and part of the swimming pool, all of which shall remain undisturbed. We affirm the decision of the District Court granting a permanent injunction of the scope specified in its January 17, 2002 opinion and order.

TO THE CLERK:

Kindly file the foregoing opinion.

/s/ Milton I. Shadur

District Judge