**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2039**

COLUMBIA GAS TRANSMISSION, LLC, d/b/a Columbia Pipeline Group, Inc.,

Plaintiff – Appellant,

v.

JANET MALIN HAAS; MELVIN LEROY HAAS,

Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:17-cv-00147-TDC)

Submitted: November 2, 2020                    Decided: November 25, 2020

Before KING, WYNN, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Colin E. Wrabley, Pittsburgh, Pennsylvania, Michael S. Dingman, REED SMITH LLP, McLean, Virginia, for Appellant. Bradshaw Rost, TENENBAUM & SAAS P.C., Chevy Chase, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Columbia Gas Transmission, LLC, d/b/a Columbia Pipeline Group, Inc., initiated this breach of contract action in early 2017 in the District of Maryland against Janet Malin Haas and Melvin Leroy Haas to enforce a pipeline right-of-way agreement over the Haases' residential property in Brinklow, Maryland. Columbia Pipeline claimed that a 40-year-old Japanese red maple tree on the property interfered with its contract rights and the safe operations of its natural gas pipeline. After a three-day bench trial conducted in May 2019, the district court ruled that the maple tree did not unreasonably interfere with Columbia's contract rights and entered judgment in favor of the Haases. *See Columbia Gas Transmission, LLC v. Haas*, No. 8:17-cv-01147 (D. Md. Aug. 21, 2019), ECF No. 110 (the "Trial Opinion"). Columbia has appealed from the court's judgment and, as explained herein, we affirm.

I.

A.

In 1955, Columbia Pipeline's predecessor in interest, Atlantic Seaboard Corporation, was granted an easement pursuant to a right-of-way agreement (the "ROW agreement") over real property now located at 421 Brighton Knolls Drive in Brinklow. Pursuant to the ROW agreement, a pipeline could "be constructed and maintained below cultivation, so that [the property owner] may fully use and enjoy the premises, subject to the rights of [the pipeline operator] to maintain and operate said line[]." *See* Trial Opinion 2. Also in 1955, Atlantic Seaboard installed within the easement a 26-inch high-pressure

2

natural gas transmission pipeline known as Line MB 26.  That pipeline has been operated continuously since 1955 and is a major source of natural gas for parts of Pennsylvania, Maryland, Virginia, and Washington, D.C.

In March 1975, the Haases purchased the property subject to the ROW agreement. In July 1976, the Haases planted the Japanese red maple within the easement.[1]  Nearly 34 years later, in May 2010, the Haases received a letter from Columbia Pipeline stating that it would be conducting vegetation clearing operations in the easement.  Nonetheless, no one from Columbia followed up regarding the vegetation clearing.  Six years later, in October 2016, the Haases received another letter from Columbia, asserting that it would soon begin clearing vegetation.  Again, there was no follow up.  Finally, in March 2017, Columbia put a flyer on the Haases' front door informing them that vegetation clearing in the easement would begin imminently.  Soon thereafter, Mr. Haas spotted Columbia employees on his neighbor's property and spoke with them.  The job foreman informed Mr. Haas that the Columbia employees would be removing trees, including the Haases' Japanese red maple.  When Mr. Haas objected to the removal of the maple tree, the foreman suggested that Mr. Haas contact Columbia officials.

Mr. Haas promptly contacted Columbia Pipeline and requested that one of its representatives come and examine the Japanese red maple and see that it did not interfere

---

[1] A Japanese red maple tree features deeply lobed leaves that are red or reddish-purple in the spring and fall.  A Japanese red maple can grow to a height of 15 to 25 feet and thus is smaller than most other species of maple tree.  According to the district court, the Haases' tree "is the centerpiece of [their] front yard."  *See* Trial Opinion 3.

3

with the pipeline. After several communications, Mr. Haas was referred to Karen Stephenson, Columbia's corporate representative and manager of its right-of-way maintenance program, who visited the Haas property. During a visit on March 24, 2017, Stephenson, Antonio Redd (a senior land agent for Columbia), and another Columbia representative insisted that the maple tree had to be removed. Redd informed Mr. Haas that Columbia personnel would be coming the following Monday or Tuesday to remove the tree.

On March 30, 2017, Mr. Haas saw Redd's vehicle and a truck driving up to the Haas property. Mr. Haas called the police as Redd got out of his Columbia Pipeline vehicle. Redd informed Mr. Haas that they had come to remove the Japanese red maple, but Mr. Haas advised Redd to stay back and that he had called the police. Efforts to cut down the maple tree ceased when police officers arrived at the Haas property and directed the Columbia personnel to leave the premises.

B.

1.

In April 2017, Columbia Pipeline filed this breach of contract action in the District of Maryland to enforce the ROW agreement and remove the Japanese red maple. Columbia sought an injunction to authorize removal of the maple tree and to prohibit the Haases from planting any other trees within the easement without Columbia's permission. The Haases opposed removal of the tree and filed a counterclaim against Columbia.

Following discovery, Columbia Pipeline moved for summary judgment, but the district court denied that motion in part and scheduled a trial. The court explained that "the

4

natural reading of . . . the [ROW agreement] contemplates that there will be cultivation within the easement and generally requires that the pipeline remain at a depth below the level to which plant roots, including the roots of cultivated trees, descend." *See Columbia Gas Transmission, LLC v. Haas*, No. 8:17-cv-01147, slip op. at 12 (D. Md. Sept. 14, 2018), ECF No. 70. The court determined that, under the ROW agreement, "the planting of trees is limited only to the extent that it actually interferes with the maintenance and operation of the pipeline." *Id.* at 13. The court identified issues that would need to be resolved at a trial concerning whether the Japanese red maple unreasonably interfered with Columbia's operations and maintenance of the pipeline.

2.

In May 2019, the district court conducted the bench trial in Greenbelt. During the trial, Columbia Pipeline presented evidence that included its expert Andrew Kvasnicka, a pipeline engineer who worked for Columbia. Kvasnicka testified, inter alia, that trees located in rights-of-way are hazards to pipelines. He explained that pipeline companies assume that the roots of trees are threats to pipelines because it is "proven" in the industry that tree "roots go to the pipeline and compromise the coating and allow the pipe to corrode." *See* J.A. 652a.[2] Several Columbia employees also testified at trial about their past experiences with root entanglement and how roots are a known hazard to pipelines.

---

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

5

According to Kvasnicka, aerial surveillance is the industry's preferred method for evaluating pipeline status because it is most accurate and efficient. Kvasnicka explained that trees located in pipeline rights-of-way "interfere with the ability to conduct aerial surveys" because tree canopies block an aerial view. *See* J.A. 647-48a. Kvasnicka also explained that pipeline markers above ground are required by law in order to "alert people of the presence of a pipeline," and he emphasized that it is "important to be able to visually see [from] one pipeline marker to the next" so that it can be determined "where the pipeline is going" and damage to the line can be avoided. *Id.* at 649-50a.

Turning to the Haases' Japanese red maple, Kvasnicka opined that the maple tree and its roots were a "potential hazard" to the pipeline. *See* J.A. 652-53a. He further asserted that because the tree interfered with the aerial surveys Columbia Pipeline had to perform, Columbia's ability to identify potential hazards was adversely impacted. Kvasnicka also posited that any leak in the pipeline would be considered a "hazardous leak" that would have to be "repaired promptly" pursuant to applicable federal regulations, *id.* at 646a, and that any delay in getting to the pipeline is a "potential hazard," *id.* at 660a. In Kvasnicka's opinion, the maple tree had to be removed, and "[e]very pipeline safety professional would require the tree be removed." *Id.* at 664a.

The Haases called several trial witnesses. Lewis Bloch was qualified as an expert arborist on their behalf in connection with root structures. Bloch explained that Japanese red maples have "very shallow root systems" and are used often in landscaping because their roots do not damage nearby sidewalks and structures. *See* J.A. 848a. Bloch advised that the average root depth of such trees is 20 to 24 inches and that the roots of the Haases'

6

tree "would not be deeper than 27 inches" based on data from a tree radar unit ("TRU") test. *Id.* at 855a. John Kelly Lewis, the general manager of a nursery, was qualified as an expert on tree valuation, tree roots, and the removal of trees. Lewis explained that he moves Japanese red maples frequently, "rarely finds roots deeper than 20" inches, and has seen roots of such trees reach, "[a]t the most, 24 inches." *Id.* at 874a. He opined that the roots of the Haases' tree were no deeper than 24 inches. Bloch also testified that the root tips of a Japanese red maple are "really fine, almost like hair" that very easily break off because they are "tiny and fragile." *Id.* at 850a. Columbia Pipeline's own expert agreed that "Japanese red maple tree[s] [are] generally known as having a shallow and non-invasive root system." *Id.* at 1103a.

3.

To complete the trial, the district court filed its carefully crafted Trial Opinion in August 2019. The court therein rejected Columbia Pipeline's contention that, under federal regulations and Columbia's internal policies, the Japanese red maple's presence on the Haas property was a *per se* interference with the easement. The court then engaged in fact finding concerning whether "this Maple Tree, in this location, over this particular pipeline, unreasonably interferes with [Columbia's] ability to operate and maintain" the pipeline. *See* Trial Opinion 25. The court found that the pipeline passes approximately two feet from the trunk of the tree, without passing directly under its trunk. The court also found that the pipeline is "between four and five feet (48-60 inches) below the ground upon which the Maple Tree sits," *id.* at 7, and the tree's roots "extend approximately 20-27 inches below the ground," *id.* at 9.

7

Specifically assessing the Haases' expert witnesses, the Trial Opinion found credible Bloch's testimony regarding a Japanese red maple's roots as well as his opinions regarding the roots of the Haases' tree. The district court observed that Bloch's opinion was corroborated by Lewis's testimony and that Columbia Pipeline "provided no [expert] testimony inconsistent" with the court's finding. *See* Trial Opinion 10. Evaluating Columbia's expert witness, the court rejected Kvasnicka's testimony as "so lacking in precision, detail, and a consideration of relevant facts" that the court could not rely upon it. *Id.* at 33.

The Trial Opinion found that, although Columbia Pipeline claimed that the Haases' tree would interfere with aerial patrols and that "aerial patrols are the primary method for conducting leakage surveys to detect gas leaks," there was no conclusive evidence that the Japanese red maple would interfere with such patrols. *See* Trial Opinion 12. The district court concluded that aerial patrols are not always required in order to conduct leakage surveys and that Columbia also conducts such pipeline surveys by walking or driving. Further, the court found that, in the event of an emergency, the tree "could be removed in four to eight hours, depending on the conditions." *Id.* at 14. Finally, the court explained that "the risk that a third party will dig at or near the Maple Tree without knowledge of the Pipeline's presence is minimal to nonexistent," because the trial judge himself visited the Haas property and found the pipeline markers to be visible. *Id.* at 18-19.

The Trial Opinion then carefully analyzed whether each of Columbia Pipeline's five assertions about the Japanese red maple's interference with the pipeline — relating to

surveillance and testing, roots, emergency removal, a tap,[3] and third-party damage —
constituted unreasonable interference with Columbia's easement rights.  As to surveillance
and testing, the district court concluded that the maple tree did not unreasonably interfere
with Columbia's ability to conduct the essential surveillance and testing of the pipeline.
Regarding the maple tree's roots, the court explained that, because the tree's root structure
presented a reduced risk to the pipeline, Columbia "needed to present some evidence
showing that this particular tree presents an actual risk."  *See* Trial Opinion 32.  The court
explained that, because there was no evidence the roots were interfering with the pipeline
and because of the tree's "spotless 40-year track record," Columbia had "failed to establish
that the general risk posed by tree roots necessitates the removal of the Maple Tree as an
unreasonable interference with pipeline maintenance."  *Id.* at 33.

Turning to Columbia Pipeline's assertions about a possible emergency removal of
the Japanese red maple, the Trial Opinion rejected Columbia's "blanket opinion that no
delay is acceptable" and ruled that a potential delay of four to eight hours in an emergency
situation does not constitute unreasonable interference.  *See* Trial Opinion 35.  Addressing
Columbia's tap claim, the district court found that the evidence was insufficient to show
the location of the alleged tap.  As a result, the court determined that the maple tree "does
not unreasonably interfere with pipeline maintenance based on the tap."  *Id.* at 38.  Finally,
with regard to asserted third-party damage, the court concluded that because the tree does

---

[3] According to the district court, "[a] tap is a small branch connected to the main transmission pipeline that was once intended to facilitate supplying gas to customers on the property where it is located."  *See* Trial Opinion 15.

9

not completely obstruct the view from one pipeline marker to the next, and because the Haas property is fenced, Columbia's speculative concerns about third-party damage based on the tree's presence failed to prove unreasonable interference.

Rejecting each of Columbia Pipeline's assertions of interference with the pipeline, both individually and cumulatively, the Trial Opinion ruled that Columbia had failed to demonstrate that the Japanese red maple unreasonably interfered with its right to operate and maintain the pipeline over the Haas property. The district court thus concluded that Columbia was "not entitled to a declaratory judgment or injunction requiring the removal of the Maple Tree." *See* Trial Opinion 41. The court dismissed the Haases' counterclaim as moot. Columbia noted this appeal from the final judgment, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

This Court reviews "a judgment following a bench trial under a mixed standard of review." *See Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019). Although we review conclusions of law de novo, "we may reverse factual findings only if they are clearly erroneous." *Id.* A factual finding is only clearly erroneous if we are "left with the definite and firm conviction that a mistake has been committed." *See United States v. Chandia*, 675 F.3d 329, 337 (4th Cir. 2012). In reviewing factual findings under the clearly erroneous standard, we will not "substitute our version of the facts for that found by the district court." *See Equinor USA Onshore Props. Inc. v. Pine Res., LLC*, 917 F.3d 807, 813 (4th Cir. 2019). Rather, if the court's "account of the evidence is plausible in light of

10

the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *See Butts*, 930 F.3d at 238. Being in the nature of a jury verdict, a "court's factual findings [that] turn on assessments of witness credibility or the weighing of conflicting evidence during a bench trial . . . are entitled to even greater deference." *See Helton v. AT & T Inc.*, 709 F.3d 343, 350 (4th Cir. 2013).

### III.

On appeal, Columbia Pipeline presents several contentions of error. First, Columbia maintains that the district court applied an incorrect legal standard in its review of the trial evidence. Second, Columbia asserts that certain of the court's factual findings are clearly erroneous. And third, Columbia claims that the Japanese red maple unreasonably interferes with Columbia's contract rights for four reasons — the applicable federal regulations, Kvasnicka's expert testimony, Columbia's inability to conduct aerial surveys, and resulting delays in emergency responses. We reject each of those contentions in turn.

### A.

Columbia Pipeline initially contends on appeal that the district court erred by reviewing the evidence pursuant to an inappropriate "actual risk" legal standard. More specifically, Columbia argues that the court erroneously created a new legal standard under which a pipeline operator will always have to prove an actual risk before removing obstructions from an easement or right-of-way. But this characterization by Columbia is incorrect, and the Trial Opinion does not support Columbia's contention.

11

In reaching its conclusion that the roots of the Japanese red maple do not unreasonably interfere with Columbia Pipeline's easement rights, the district court observed that Columbia "needed to present some evidence showing that this particular tree presents an *actual risk* to the Pipeline." *See* Trial Opinion 32 (emphasis added). Read in context, we are satisfied that the court did not apply an "actual risk" legal standard. Rather, the court carefully explained that "[b]ecause of the risk of damage that tree roots can cause, the Court does not conclude that there must be evidence of actual contact between tree roots and a pipeline, or actual emergency relating to a pipeline, before the roots would be deemed to present an unreasonable interference." *See* Trial Opinion 31. In fact, the court recognized that "[u]nder certain circumstances, the presence of a tree in close proximity to a pipeline, by itself, may be sufficient to establish an unreasonable interference because of such potential risk." *Id.* What the court ruled with respect to the Haases' maple tree is that because the tree's roots are substantially shallower than the pipeline and the tree has coexisted with the pipeline for more than 40 years without complaints or issues, Columbia had an obligation to present stronger evidence of interference. Thus, the court did not depart from the applicable legal principles with respect to an unreasonable interference.

B.

Columbia Pipeline next contends that the district court made factual findings that are clearly erroneous and prejudicial. More specifically, Columbia submits that the court clearly erred in finding that the Japanese red maple's roots were only 27 inches deep and in deciding that there was little to no risk of third-party damage because the pipeline's markers were not obscured by the tree.

12

Each of those factual challenges is without merit. Columbia Pipeline's primary problem rests on the rejected evidence of its expert witness, Kvasnicka. The district court rejected that testimony as lacking in credibility. As a court of appellate review, we are in no position to disturb a trial court's credibility finding because, when a "court's factual finding in a bench trial is based upon assessments of witness credibility, such finding is deserving of the highest degree of appellate deference." *See Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) (internal quotation marks omitted).

In these circumstances, the district court was justified in deciding that Kvasnicka's testimony was lacking in credibility. According to Kvasnicka, the Japanese red maple had been a potential threat since it was first planted in 1976, yet Columbia Pipeline made no serious effort to remove it until 2017, more than 40 years later. Kvasnicka also erroneously assumed that the roots of the maple tree touch the pipeline itself. That assumption is especially dubious given Kvasnicka's testimony that if Columbia prevails in this case, the maple tree's roots will not be immediately removed. Finally, Kvasnicka could not identify the distance at which tree roots no longer present a danger to a pipeline, relying on several variables that favor Columbia. He ignored the variables in the Haases' favor, such as the tree's 40-year track record and evidence that the roots of Japanese red maples are not only shallow but also have a fine, hair-like material at their tips. Thus, there is ample support in the trial record for the court's rejection of Kvasnicka's testimony.

Turning specifically to the depth of the Japanese red maple's roots, the Haases' experts and Columbia Pipeline's expert agreed that the average root depth for such a tree

13

is 20 to 24 inches below ground, although Columbia's expert cautioned against relying solely on averages. The district court found that the roots of the Haases' tree might be as deep as 27 inches, in favor of Columbia. Rather than viewing the record as a whole, however, Columbia now focuses on isolated items of evidence that the court relied on in making its challenged finding. For example, Columbia attacks the reliability of a TRU radar test that purported to measure the root depth at 27 inches, as well as the averages presented by the Haases' expert arborists. The court recognized, however, that "TRU radar generally has a 20 to 30 percent error rate." *See* Trial Opinion 10. Furthermore, Kvasnicka's testimony was that if Columbia prevailed in this lawsuit, the maple tree will simply be "cut at grade" — meaning at ground level — without removing the roots. *See* J.A. 817-18a. That evidence undermines Columbia's assumption that the tree's roots are in contact with the pipeline.

Notably, with respect to obstruction of the pipeline's markers, the district court actually visited the Haas property and, as part of the trial proceedings, took a "view" of it. The court explained that, "when standing on the Property's lawn, between the pipeline markers, both [markers] can be seen, in opposite directions, from the same location, approximately midway between them." *See* Trial Opinion 19. Given the court's firsthand observations, we are simply in no position to second guess its findings regarding the visibility of the pipeline's markers and the likelihood of third-party damage.[4]

---

[4] While Columbia Pipeline purported to make additional challenges to the district court's factual findings, they are more appropriately categorized as challenges to the (Continued)

C.

Finally, we turn to Columbia Pipeline's primary contention on appeal, which is that the record conclusively establishes that the Japanese red maple unreasonably interferes with its contract rights. More specifically, Columbia asserts that four aspects of the trial record — (1) the applicable federal regulations on pipeline safety, (2) Kvasnicka's expert testimony, (3) Columbia's asserted inability to conduct aerial surveys, and (4) any delay in emergency responses — separately establish that the maple tree unreasonably interferes with its right to operate and maintain the pipeline. Each of those propositions also fails, as explained further below.

1.

First, Columbia Pipeline argues that the applicable federal regulations concerning pipeline safety require that the Japanese red maple be removed and that the district court's ruling establishes a dangerous precedent that threatens to substantially impair pipeline safety and impede pipeline operators' compliance with federal safety requirements. Notably, the pertinent regulations do not establish bright-line rules regarding trees that are located in rights-of-way. In this appeal, however, Columbia asks us to create a bright-line rule. Put another way, Columbia is touting federal regulations because it would have us forgo a fact-specific inquiry.

---

court's legal conclusions. We address those challenges under the applicable de novo standard elsewhere within this decision.

15

The Third Circuit has explicitly cautioned against acceding to litigants' efforts to establish bright-line rules. *See Texas Eastern Transmission LP v. Bowers*, 65 F. App'x 791, 796 n.3 (3d Cir. 2003) (unpublished) (rejecting a pipeline company's endeavor to create a bright-line rule that would thwart "property owners who wish to carve out exceptions to pipeline easement boundaries for the purpose of preserving individual trees" because the role of the court "is to decide only the case on hand, not to provide favorable [future] precedent"). The Third Circuit is not alone in mandating fact-specific inquiries to decide such easement disputes. *See, e.g.*, *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 626 (6th Cir. 2008) (noting "each easement case is factually unique"); *Columbia Gas Transmission, LLC v. Grove Ave. Devs., Inc.*, 357 F. Supp. 3d 506, 519-20 (E.D. Va. 2019) (explaining that the "critical question in this case is not whether an asphalt crossing, in the abstract, unreasonably interferes . . . with safe operation . . . but rather, whether this specific road . . . would constitute an 'unreasonable' interference"); *Rogers v. P-M Hunters' Ridge, LLC*, 967 A.2d 807, 819 (Md. 2009) (explaining that when easement is reserved in general terms, courts must look to surrounding circumstances to determine whether unreasonable interference exists). We also decline to establish a precedent that would authorize Columbia Pipeline and litigants in similar situations to use the federal regulations as a bar to fact-specific inquiries.

2.

Columbia Pipeline places great emphasis on its expert Kvasnicka's rejected evidence because he was the trial's sole pipeline safety expert. According to Columbia, Kvasnicka's testimony that the Japanese red maple is a potential hazard conclusively

16

established that the tree has to be removed under the applicable regulations and that its presence in the easement therefore constitutes an unreasonable interference with Columbia's contract rights. As emphasized heretofore, however, the district court rejected Kvasnicka's testimony because it was not credible. This contention of error therefore also fails.

3.

Columbia Pipeline next contends that the Japanese red maple unreasonably interferes with its ability to conduct aerial surveillance of the pipeline. That is problematic, Columbia argues, because the federal regulations require that it conduct routine surveillance to identify leaks, deterioration of cathodic protection, and other unusual operating or maintenance conditions. *See* 49 C.F.R. § 192.613(a). Assuming that the maple tree somehow inhibits the aerial surveys of that section of the pipeline, however, the presence of the tree does not, as the district court ruled, unreasonably interfere with Columbia's easement rights.

Columbia Pipeline argues that aerial surveillance is essential because it is more accurate than any other surveillance method. If the alternatives to aerial surveillance were so inaccurate, however, Columbia would not have written such alternatives into its own policies. *See* J.A. 483a (explaining that "facility patrols may be performed by any of the following methods: walking, driving, flying or other appropriate methods of observing the right-of-way"). Further, Columbia failed to produce any evidence that attempted aerial surveys were actually thwarted by the Japanese red maple. As the Trial Opinion explained, an inspection of the pipeline only has to take place once a year and there was no evidence

17

that an aerial inspection could not be conducted in winter. In conjunction with Columbia's own policies, that fact supports the district court's conclusion that the maple tree does not constitute an unreasonable interference with aerial surveillance.

4.

Finally, Columbia Pipeline claims that a four- to eight-hour delay caused by the Japanese red maple in accessing the pipeline through the Haas property in an emergency situation constitutes an unreasonable interference. To be sure, there could be danger from a pipeline emergency, and the public interest supports ensuring that Columbia can "repair and service natural gas pipelines as quickly, safely, and reasonably as possible." *See Andrews*, 544 F.3d at 629. According to the federal regulations and Columbia's own Facility Patrol and Leakage Protection Plan, a Grade 1 leak requires "immediate action." *See* J.A. 1450a; *see also* 49 C.F.R. § 192.711(a). Yet Columbia did not present any evidence explaining "immediate action." It simply relied on Kvasnicka's expert opinion that no delay of any type is ever acceptable. And Kvasnicka's rejected testimony was inconsistent. When asked by the district court what would happen to the maple tree should Columbia prevail, Kvasnicka said it would simply "be cut at grade," without removing the roots, even though he repeatedly emphasized that the time spent cutting away roots was a significant factor underlying his concern for potential delays caused by the tree. *See* J.A. 817-18a. Likewise, the court concluded that Columbia failed to establish "a need to remove the Maple Tree based on potential delay in reaching the pipeline if needed, particularly when its own proposed removal plan includes a partial wait-and-see approach."

18

*See* Trial Opinion 36.  We are obliged to accept the court's view and conclude that this evidence undermined Kvasnicka's claim that any potential delay must be avoided.

Columbia Pipeline has also failed to direct us to any authority as to what constitutes an unacceptable delay, relying only on a Sixth Circuit decision noting that pipeline operators must be able to "repair and service natural gas pipelines as quickly, safely, and reasonably as possible."  *See* Br. of Appellant 47 (quoting *Andrews*, 544 F.3d at 629).  The *Andrews* court upheld the trial court's determination that trees should be removed pursuant to the parties' easement agreement.  *See* 544 F.3d at 630.  But *Andrews* involved multiple pine trees, rather than a single Japanese red maple.  And one of Columbia's trial witnesses described pine trees as some of the worst offenders of pipeline damage.

Further, other courts have found that longer delays than that discussed here will not constitute unreasonable interference.  For example, the Third Circuit upheld a "district court's determination that the additional ten hours (at the outside) to repair the pipeline is only a 'minimal burden' and that the continued presence of the Tree will not significantly interfere with emergency repair of the pipeline."  *See Bowers*, 65 F. App'x at 795; *see also Grove Ave. Devs., Inc.*, 357 F. Supp. 3d at 527 (doubting that eight-hour delay in emergency pipeline repair resulting from proposed asphalt crossing would constitute unreasonable interference on its own).  In sum, we are satisfied with the district court's decision that a four- to eight-hour delay in an emergency situation does not constitute an unreasonable interference with Columbia Pipeline's contract rights.

IV.

Pursuant to the foregoing, we affirm the district court's judgment in favor of the

Haases.

*AFFIRMED*